UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROYSTER-CLARK )
AGRIBUSINESS, INC. and )
ROYSTER-CLARK, INC., )
 )
      Plaintiffs, )
 )
    v. ) Civil Action No. 05-0122 (ESH)
 )
STEPHEN L. JOHNSON, )
Administrator, United States )
Environmental Protection Agency, )
 )
      Defendant. )
_____)

## MEMORANDUM OPINION

Plaintiffs seek a declaration that defendant has acted in excess of his statutory authority by issuing a Notice of Violation ("NOV") of the Clean Air Act ("CAA"), 42 U.S.C. § 7401, *et seq*., and an injunction to prevent defendant from instituting "any civil, administrative, or legal action or proceeding of any sort, in any forum, arising out of or related to the events, transactions, occurrences, or legal relations at issue" in the NOV. (Am. Compl. at 17.) Defendant moves for dismissal on the basis of lack of jurisdiction, arguing that sovereign immunity has not been waived; the action, if justiciable at all, properly lies within the exclusive jurisdiction of a circuit court; and the agency action is not final and therefore non-reviewable. For the reasons stated below, the Court grants defendant's motion and dismisses plaintiffs' complaint for lack of jurisdiction.

**BACKGROUND**

In July 2004, the United States Environmental Protection Agency ("EPA") issued a NOV to plaintiffs alleging that a nitric acid manufacturing facility that plaintiffs owned and operated was violating Part C of the CAA, the Ohio State Implementation Plan ("SIP"), the federal New Source Performance Standards ("NSPS") for nitric acid plants, and sections 502 and 503 of the CAA.  (Am. Compl. ¶¶ 38, 40, Ex. D.)  Plaintiffs claim that this action exceeded defendant's statutory authority because plaintiffs did not violate the statute and regulations and because affirmative defenses prevent enforcement.  (*Id*. ¶¶ 47-73.)  While plaintiffs allege that a "decision as to enforcement has been made," they fail to assert that defendant has in fact brought an enforcement action.  (Pls.' Opp'n at 2.)

**ANALYSIS**

Federal courts are courts of limited jurisdiction that may exercise only those powers authorized by the Constitution and statute.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "'Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is [the] power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citations omitted).  In a suit where the United States or one of its agencies is a defendant, a waiver of sovereign immunity is a prerequisite to subject matter jurisdiction.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Here, the Court is without jurisdiction because plaintiffs have failed to satisfy the requirements for any of three potentially applicable waivers of statutory immunity: (1) the *Larson* doctrine for *ultra vires* acts of federal officers; (2) section 702 of the

Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*.; and (3) section 307(b)(1) of the CAA.

## I.     Legal Standard

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the Court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiffs' favor." *Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000). When opposing a Rule 12(b)(1) motion, plaintiffs have the burden of persuasion to establish by a preponderance of the evidence the existence of subject matter jurisdiction. *Id*. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted).

## II.    *Ultra Vires* Acts of a Federal Official and the *Larson* Doctrine

Plaintiffs attempt to cast their complaint as one that seeks a determination that defendant has acted *ultra vires,* rather than as a facial attack upon the validity of the NOV issued by the EPA. (*See* Pls.' Opp'n at 7 ("[Plaintiff] is not appealing the NOV . . . . Rather, [plaintiff] is challenging the Administrator's actions in excess of his legal and statutory authority to enforce . . . CAA requirements.").) Were the Court to blindly accept this characterization, it would have to agree that judicial review would be favored, since "[t]he presumption is particularly strong that Congress intends judicial review of agency action taken in excess of delegated authority." *Amgen, Inc. v. Smith*, 357 F.3d 103, 111 (D.C. Cir. 2004). Consistent with that presumption, sovereign immunity does not bar a suit challenging the actions of a federal officer who has acted in excess of his legal authority. *Larson v. Domestic & Foreign Commerce*

*Corp.*, 337 U.S. 682, 689-90 (1949) ("[W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. . . . His actions are ultra vires his authority and therefore may be made the object of specific relief . . . without impleading the sovereign . . . ."); *see Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996) ("[I]f the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority, sovereign immunity does not bar a suit.").

However, plaintiffs cannot invoke this narrow exception to the doctrine of sovereign immunity. Although plaintiffs appear to believe that the mere invocation of the words "*ultra vires*" is sufficient to eviscerate the protections of sovereign immunity, they fail to allege any *ultra vires* action by defendant. On the contrary, plaintiffs raise a laundry list of defenses to a potential enforcement action. In effect, they contend that defendant has acted *ultra vires* by issuing a NOV to a party that lacks liability. But as *Larson* and its progeny make clear: "[I]n [*ultra vires*] cases the relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. *A claim of error in the exercise of that power is therefore not sufficient*." *Larson*, 337 U.S. at 690 (emphasis added). *See also Amgen, Inc.*, 357 F.3d at 113 (D.C. Cir. 2004) (allegations that an authorized action was "arbitrary, capricious, or procedurally deficient" are insufficient). Defendant is clearly authorized to issue a NOV "[w]henever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of an applicable implementation plan or permit" or various other requirements or prohibitions. 42 U.S.C. § 7413(a)(1), (3). Thus, defendant acts within his statutory power if he *finds* a violation,

and even if this finding is ultimately found to be in error, as plaintiffs allege, it is still within defendant's statutory authority to issue a notice.[1/]

Furthermore, were the Court to embrace plaintiffs' expansive interpretation of *ultra vires* action, administrative adjudication would effectively be precluded by artful pleading. In this case, Congress has provided enforcement mechanisms for reviewing alleged violations of the CAA. After the EPA issues a NOV, it may issue an order requiring compliance, issue an administrative penalty, bring a civil enforcement action, or request the Attorney General bring a criminal enforcement action. 42 U.S.C. § 7413(a)(1), (3). Each of these enforcement options provides an opportunity for plaintiffs to raise the very defenses they argue here. *See* 42 U.S.C. § 7413(a)(4) (requiring EPA to confer with the person to whom the NOV was issued prior to issuing order); 42 U.S.C. § 7413(d)(2)(A) (requiring a hearing on the record before issuing penalties); 42 U.S.C. § 7413(b) (requiring an action in a United States District Court for civil enforcement); 42 U.S.C. § 7413(a)(3)(D) (requiring the Attorney General to commence a criminal action). *See also Union Elec. Co. v. EPA*, 593 F.2d 299, 304-06 (8th Cir. 1979) (defenses to NOV issued for CAA can be raised in any subsequent enforcement proceedings). If an alleged CAA violator is able to enjoin an agency's nascent enforcement action by merely

---

[1/] In response to the numerous cases where courts have found that sovereign immunity applied because *ultra vires* acts had not been alleged, plaintiffs offer only conclusory statements that are devoid of any specifics as to the acts which they challenge are beyond defendants' authority. (*See* Pls.' Opp'n at 11 ("While the plaintiff in *Larson* did not allege any statutory limitation and *ultra vires* acts in excess of such statutory authority, clearly, [plaintiff] has done so in the Amended Complaint."); *id*. at 12 ("In this case, [plaintiff] has specifically alleged that the Administrator has exceeded his statutory authority . . . ."); *id*. at 16 ("In contrast, [plaintiff] alleges that the Administrator's acts are *ultra vires* outside his authority under the CAA.").) Bald assertions, however, do not convert an allegedly erroneous exercise of statutory authority into an *ultra vires* act. "Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

claiming that the Administrator has acted *ultra vires*, as plaintiffs attempt to do here, the statutory enforcement mechanisms would be rendered meaningless. This outcome is flatly inconsistent with the notion of administrative adjudication and Congress' intent when enacting section 113 of the CAA.

Thus, plaintiffs cannot merely parrot the phrase *ultra vires* and thereby benefit from the *Larson* doctrine and avoid the doctrine of sovereign immunity.

**III.    Section 702 of the APA**

Plaintiffs argue in the alternative that, even if *Larson* does not apply, statutory immunity has been explicitly waived by § 702 of the APA.[2] (*See* Pls.' Opp'n at 22-23.) Although plaintiffs claim to be adversely affected by agency action and seek relief other than money damages, § 702 does not waive sovereign immunity in this case because another statute grants consent to suit and expressly forbids plaintiffs from bringing this action.

---

[2] Section 702 provides:

> A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

The CAA provides its own waiver of sovereign immunity and procedures for review, and it precludes all other forms of judicial review, stating that "[n]othing in this [Act] shall be construed to authorize judicial review of regulations or orders of the Administrator under this [Act], except as provided in [section 307 of the CAA]." 42 U.S.C. § 7607(e). It is well-settled that subsection 307(b)(1) of the CAA provides the exclusive means of obtaining review of final actions by EPA under the CAA. *Harrison v. PPG Indus.*, 446 U.S. 578, 589 (1980); *Missouri v. United States*, 109 F.3d 440, 441 (8th Cir. 1997); *Virginia v. United States*, 74 F.3d 517, 522-26 (4th Cir. 1996); *cf. Massachusetts v. EPA*, 415 F.3d 50, 53-56 (D.C. Cir. 2005).

Because the CAA provides its own procedures for judicial review and expressly forbids any other judicial review, plaintiffs cannot avoid the CAA by relying on section 702 of the APA.

**IV.    Subsection 307(b)(1) of the CAA**

Subsection 307(b)(1) of the CAA provides a limited waiver of sovereign immunity for challenges to agency action under the CAA, and these waiver conditions must be strictly construed. *See United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). In particular, subsection 307(b)(1) requires that: (1) the case be filed only with the appropriate United States Court of Appeals and (2) only final agency actions are reviewable. 42 U.S.C. § 7607(b)(1). As plaintiffs satisfy neither of these requirements, sovereign immunity is not waived by subsection 307(b)(1) of the CAA.

**A.    Assignment to the Court of Appeals**

Subsection 307(b)(1) of the CAA provides a comprehensive jurisdictional scheme that governs when and in what court EPA's actions may be reviewed. *See* 42 U.S.C. §7607(e) ("Nothing in this [Act] shall be construed to authorize judicial review of regulations or orders of

the Administrator under this [Act] except as provided in [CAA Section 307]."). Generally, "nationally applicable regulations promulgated, or final action taken, by the Administrator . . . may be filed only in the United States Court of Appeals for the District of Columbia," while "any other final action of the Administrator . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit." *Id*. § 7607(b)(1). As subsection 307(b)(1) provides no jurisdiction in this Court, it is impossible for this case to qualify for the waiver of sovereign immunity.

Plaintiffs attempt to circumvent subsection 307(b)(1)'s limitations by arguing its "action does not involve any of the listed actions having regional or local applicability." (Pls.' Opp'n at 24.) However, subsection 307(b)(1) provides that "*any other final action of the Administrator* . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. 42 U.S.C. § 7607(b)(1) (emphasis added). The Supreme Court has confirmed that this phrase "must be construed to mean exactly what it says, namely, *any other* final action." *Harrison*, 446 U.S. at 589 (emphasis in original). Furthermore, the Supreme Court has noted that the scope of agency action intended to be covered by this phrase encompasses "comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). As the Court has already held that this case challenges the allegedly erroneous exercise of statutory power and not *ultra vires* action, plaintiffs' claim unquestionably falls within the ambit of "any other final action," vesting exclusive jurisdiction in the appropriate appellate court.[3]

---

[3] Although plaintiffs point to cases involving judicial review of the CAA by district courts as evidence that their claim need not be brought in the Court of Appeals (*see* Pls.' Opp'n at 24), these two courts found jurisdiction in the citizen suit provision, section 304 of the CAA, which

B.      **Requirement of Final Agency Action**

Alternatively, subsection 307(b)(1) of the CAA does not waive sovereign immunity because the action under review, the issuance of an NOV, is not a final agency action.[4/] Agency action is reviewable under section 307(b)(1) only to the extent that it constitutes "final agency action." *Am. Trucking Ass'ns*, 531 U.S. at 478 ("The bite in the phrase 'final action' is . . . rather in the word 'final.'"). The standard for determining whether an action is final for purposes of section 307(b)(1) is the same as that for determining what is final agency action under the APA, 5 U.S.C. § 704.[5/] *Am. Trucking Ass'ns*, 531 U.S. at 478; *Harrison*, 446 U.S. at 586. The Supreme Court has established a two-part test to determine when an agency action is reviewable as "final": (1) the action "must mark the 'consummation' of the agency's decisionmaking process--it must not be of a merely tentative or interlocutory nature," *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citing *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)); and (2) the action "must be one by which 'rights or obligations have been determined,'

---

provides that "any person may commence a civil action . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2); *see Conoco, Inc. v. Gardebring*, 503 F. Supp. 49, 51 (N.D. Ill. 1980); *U.S. Steel Corp. v. Fri*, 364 F. Supp. 1013, 1017 (N.D. Ind. 1973). In contrast, plaintiffs challenge the Administrator's discretionary actions, and they do not claim that he has failed to perform a non-discretionary statutory obligation. Therefore, these cases are inapposite.

[4/] While defendant is correct that "it is unclear just what specific actions Plaintiffs believe to be unlawful" (Def.'s Reply at 4), plaintiffs appear to argue that the Court should review the NOV as a final agency action. (*See* Pls.' Opp'n at 24 ("Several courts, in cases not cited by the Administrator, have held that a notice of violation issued by a federal agency is final agency action."); 26 ("[T]he conclusions in the NOV constitutes [sic] final agency action . . . .").)

[5/] For this reason, the lack of final agency action provides yet an additional reason for rejecting plaintiffs' lame attempt to rely on the waiver of sovereign immunity in section 702 of the APA. *See* 5 U.S.C. § 704.

or from which 'legal consequences will flow.'" *Id*. at 178 (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). *See Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13-14 (D.C. Cir. 2005). Pursuant to this test, the NOV does not constitute final agency action.

Rather than the consummation of the agency's decisionmaking process, a NOV is merely a first step in a potential enforcement process. The language of subsections 113(a)(1), (3) makes it clear that EPA retains considerable discretion in enforcement options after issuing the NOV. *See* 42 U.S.C. § 7413(a)(1) ("[A]fter . . . such notice of violation is issued, the Administrator *may* . . . issue an order . . . , issue an administrative penalty . . . , or bring a civil action.") (emphasis added); 42 U.S.C. § 7413(a)(3) ("[T]he Administrator *may* . . . issue an administrative penalty . . . , issue an order . . . , bring a civil action . . . , or request the Attorney General to commence a criminal action.") (emphasis added). Furthermore, no legal consequences flow from the issuance of the NOV because it merely notifies plaintiffs of their existing obligations under the CAA. It does not impose any new obligations or penalties on plaintiffs, and it does not even direct or request that plaintiffs correct the alleged violations. (*See* Pls.' Am. Compl. Ex. D.) In order to compel action or impose penalties, EPA would have to pursue further enforcement action, *see* 42 U.S.C. § 7413(a)(1), (3), at which time plaintiffs would have an opportunity to raise the defenses that they have raised here. Absent such action, the findings and conclusions in the NOV have no "direct and immediate . . . effect on the day-to-day business" of plaintiffs. *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (citations omitted). In fact, plaintiffs concede as much when the only harm they can point to is merely speculative -- the "actions *threatened* by EPA in [the NOV] indicate that EPA

*intends* to penalize Plaintiff." (Am. Compl. ¶ 43 (emphasis added).) No legal consequences result unless EPA chooses to carry through with these "threats."

Although the question of whether an NOV under the CAA is a final agency action is one of first impression in this circuit, all of the circuits that have addressed the issue have concluded that it is not. *See Pacificorp v. Thomas*, 883 F.2d 661, 661 (9th Cir. 1988); *West Penn Power Co. v. Train*, 522 F.2d 302, 310-11 (3d Cir. 1975); *see also Union Elec.*, 593 F.2d at 304-06 (rejecting pre-enforcement review of CAA NOV; *Lloyd A. Fry Roofing Co. v. EPA*, 554 F.2d 885, 890-91 (8th Cir. 1977) (pre-enforcement review of NOV is "wholly inconsistent with the enforcement mechanism established by Congress.").[6/] As the Third Circuit explained, "the only effect of a notice of violation is to make the recipient aware that the 'definitive' regulations are not being met and to trigger the statutory mechanism for informal accommodation which precedes any formal enforcement measures." *West Penn Power Co.*, 522 F.2d at 311. As such, the NOV does not impose any legal consequences, and it is not final agency action. *Id*. at 310-11.

Furthermore, to the extent that this Circuit has addressed the finality of notices of violation, it has clearly recognized that preliminary enforcement-related letters are not "binding" for purposes of judicial review. *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 450 (D.C. Cir.

---

[6/] Furthermore, several courts have held that an administrative compliance order, a *later* step in the administrative process, does not constitute final agency action. *See Acker v. EPA*, 290 F.3d 892 (7th Cir. 2002); *Solar Turbines, Inc. v. Seif*, 879 F.2d 1073 (3d Cir. 1989); *Asbestec Constr. Servs. v. EPA*, 849 F.2d 765 (2d Cir. 1988). *But see Allsteel, Inc. v. EPA*, 25 F.3d 312 (6th Cir. 1994) (compliance order is final agency action because it required recipient to halt construction of proposed modifications); *Alaska Dept. of Envtl. Conserv. v. EPA*, 244 F.3d 748 (9th Cir. 2001), *aff'd*, 540 U.S. 461 (2004) (same). But these latter cases are of no help, for unlike a compliance order, a NOV does not order plaintiffs to stop work or impose penalties for non-compliance.

2004) (EPA letters part of ongoing dialogue concerning regulatory interpretation underlying RCRA notices of violation not final agency action); *Reliable Automatic Sprinkler Co.*, 324 F.3d at 732-33 (CPSC letter initiating administrative investigation and requesting voluntary corrective action not final agency action); *AT&T v. EEOC*, 270 F.3d 973, 975-76 (D.C. Cir. 2001) (EEOC letters determining that AT&T had violated the law and threatening enforcement not final agency action). Although such notices may determine that the recipient has violated the law and threaten legal action, they do not themselves inflict cognizable legal injury nor bind the agency to a particular course of action. *See Reliable Automatic Sprinkler Co.*, 324 F.3d at 732 ("No legal consequences flow [where] . . . there has been no order compelling [plaintiffs] to do anything."). Plaintiffs will have ample opportunity to obtain review of the validity of the agency's position by defending itself in an enforcement action, if the agency chooses to institute one. *See id.*[7]

The cases relied on by plaintiffs to support the proposition that a NOV is final agency action are easily distinguishable and provide no basis for rejecting the circuit decisions which have decided this very issue. For instance, in *Arch Mineral Corp. v. Babbitt*, 104 F.3d 660 (4th Cir. 1997), the court found that the Office of Surface Mining Reclamation and Enforcement's ("OSM's") placement of Arch Mineral on a list of companies that would be barred from obtaining future OSM permits constituted final agency action. Unlike the issuance of a NOV, OSM's decision imposed "punitive" legal consequences on Arch Mineral and the "only step left was the imposition of the sanction." *Id*. at 668. In the instant case, a sanction will *only* result if and when EPA invokes one of its possible enforcement options. Plaintiffs' reliance on *P.F.Z.*

---

[7] Based on these authorities, plaintiffs' argument that they face a "Hobson's choice" because the enforcement option selected by EPA may depend on how quickly plaintiffs achieve compliance clearly fails. (Pls.' Surreply at 4 (quoting Compl., Ex. E).)

*Properties, Inc. v. Train*, 393 F. Supp. 1370 (D.D.C. 1975), is likewise misplaced because the court failed to address whether the NOV issued in that case was a final agency action, and more importantly, the EPA had issued a cease and desist order in addition to a NOV. *Id.* (holding that waters of the mangrove forest being developed by plaintiff were "navigable waters" under the Clean Water Act and that EPA's issuance of a NOV was a proper exercise of statutory authority). Finally, plaintiffs cite *Conoco Inc. v. Gardebring*, which held that a NOV under the CAA was final agency action because of EPA's lack of discretion in choosing to pursue enforcement. 503 F. Supp. 49, 52 (N.D. Ill. 1980) ("Once Notices of Violation are issued, Section 113 of the Clean Air Act mandates that the Administrator 'shall commence' a civil action if a violation continues for more than 30 days after the Notices have been issued. Thus, upon expiration of the 30-day period, no further agency action is required before the Administrator must enforce his decision by filing a civil action. For this reason, Notices of Violation are a final agency action subject to judicial review."). This reasoning might be persuasive had the statute not been extensively amended in 1990, eliminating this lack of discretion. *See* Pub. L. No. 101-549 § 701, 104 Stat. 2399 (1990). Under the version of the statute currently in force, EPA has considerable discretion in determining whether to bring an enforcement action following the issuance of an NOV. See 42 U.S.C. § 7413(a)(1) ("[T]he Administrator *may* . . . issue an order . . . , issue an administrative penalty . . . , or bring a civil action.") (emphasis added); 42 U.S.C. § 7413(a)(3) ("[T]he Administrator *may* . . . issue an administrative penalty . . . , issue an order . . . , bring a civil action . . . , or request the Attorney General to commence a criminal action.") (emphasis added); 42 U.S.C. § 7413(b) ("[T]he Administrator shall, *as appropriate*, [in specified situations], and *may*, [in any other situation] commence a civil action.") (emphasis added). The reasoning in

*Philadelphia Electric Co. v. Costle*, No. 78-4170, 1978 U.S. Dist. LEXIS 7008 (E.D. Pa. Dec. 27, 1978), is similarly obsolete. *See id.* at *11. As a result, plaintiffs fail to persuade the Court that it "should follow the well reasoned decisions of *Conoco* and *Philadelphia Electric*." (Pls.' Surreply at 3.)

In sum, plaintiffs offer nothing to rebut the clear holdings of other circuits that an NOV issued under the CAA is not a final agency action, nor do they even attempt to address this Circuit's well-established jurisprudence regarding notices of violation.[8/]

## CONCLUSION

For the reasons stated above, the Court finds that it lacks jurisdiction over plaintiffs' complaint, and therefore, it grants defendant's motion to dismiss. A separate order accompanies this Memorandum Opinion.

s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date:  August 29, 2005

---

[8/] Plaintiffs misconstrue *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), as the "seminal case for determining whether an agency action is 'final'" (Pls.' Opp'n at 25), whereas the case in fact pertains to ripeness. Because the Court has already concluded that judicial review is precluded on other grounds, it need not consider defendant's alternative arguments regarding ripeness. (*See* Def.'s Reply at 10-14.)